ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 3 0 2016    1:03

CLERK, U.S. DISTRICT COURT
By _____
Deputy

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| THE BOX FACTORY, INC. AND CHJ LEASING, LLC<br>**Plaintiff** | § § § § § § § § | |
| **VERSUS** | § § § | **CIVIL ACTION NO: 4:15-CV-861-A** |
| **VERLAN FIRE INSURANCE COMPANY**<br>**Defendant** | § § § | **JURY DEMANDED** |

### DEFENDANT VERLAN FIRE INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE TOM IRMITER AND BRIAN JOHNSON AS EXPERT WITNESSES

Defendant Verlan Fire Insurance Company ("Verlan"), moves this Court for an Order striking the expected expert testimony of Tom Irmiter ("Irmiter") and Brian Johnson ("Johnson") with Forensic Building Science, Inc. ("FBS") on the basis that (1) the opinions of Irmiter and Johnson as to the cause of the Property's roof damages and the cost to repair same are unreliable and irrelevant and (2) Irmiter is not qualified to render such opinions. In support of this motion, Verlan represents to this Court the following:

## I.   FACTUAL BACKGROUND

Verlan issued a commercial property insurance policy bearing Policy No. M00349915 to The Box Factory, Inc. and CHJ Leasing, LLC ("Plaintiffs") for the property located at 300 Northwest 7th Street, Mineral Wells, Texas 76067 (the "Property"), effective February 9, 2015, to February 9, 2016. (the "Policy"). The Policy provides that, in the event of a loss, the damages will be adjusted as follows:

A. For all buildings, structures, improvements, and betterments and personal property, the cost of repair or replacement, whichever is less, with material of like kind and quality…We will not pay more than the amount actually spent to repair or replace the property.

1

On or about May 19, 2015, the Property's roof allegedly sustained hail damage; consequently, Plaintiffs submitted a claim to Verlan. During the adjustment of the loss, Verlan was informed that the Property's roof also sustained extensive hail damage in 2013 and that the Plaintiffs' prior insurance carrier paid $366,412.34 to replace the roof. Plaintiffs' representative advised Verlan that following the 2013 hail storm, the top layer of roof was removed, a new top layer was applied, and the roof was re-coated. Based on its inspection and the representations of Plaintiffs' representative, Verlan estimated damages in the amount of $354,294.00 and tendered payment to Plaintiffs in the amount of $179,294.00.[1]

Subsequently on July 10, 2015, Verlan received correspondence from the Plaintiffs' public adjuster demanding additional payment for damages. Following receipt of this letter, Verlan discovered that contrary to the representations of Plaintiffs' representative at the time of the roof inspection, Plaintiffs did <u>not</u> in fact replace the Property's roof following the 2013 hail loss. Instead, Plaintiffs merely paid $86,000 to apply a coating over the damaged roof.  A dispute arose between Plaintiff and Verlan regarding the cause and scope of the alleged damages to the Property's roofs, and this lawsuit followed.

In connection with this lawsuit, Plaintiffs filed their expert designations on September 6, 2016, identifying Tom Irmiter and Brian Johnson with Forensic Building Sciences, Inc. ("FBS") as experts on the cause and scope of the roofing damages and submitted a damage estimate and report.[2]  According to the report prepared and signed by Irmiter, and stamped by Johnson, the May 19, 2015 weather event created openings in the roof system allowing extensive water from the storm to enter into and through the system to the interior.[3]  As a result, Irmiter and Johnson

---

[1]   This amount represented the damage estimate of $354,294 minus the Plaintiffs' $175,000 deductible.
[2]   pp. APPX 1-7.
[3]   pp. APPX 26-28.

opine that the entire roofing system needs to be removed and replaced.[4]   The repair estimate prepared by Jim Irmiter estimates this will cost $1,508,079.70.[5]

## II. **ARGUMENT AND AUTHORITY**

### A. **LEGAL STANDARDS FOR ADMISSION OF EXPERT TESTIMONY**

Federal Rule of Evidence 702 provides that "a witness qualified as an expert by knowledge, skill experience, training, or education, may testify in the form of an opinion or otherwise," if "scientific, technical, or other specialized knowledge will assist the trier of facts to understand the evidence or to determine a fact issue."   As a threshold matter, a court must determine that the witness is qualified as an expert in the relevant field before proceeding to carefully screen the expert witness's tendered opinions to ensure that they comply with Rule 702's additional stringent requirements.[6]

Not only must an expert be qualified, but an expert's testimony must also be both relevant and reliable.[7]   As such, "the trial judge must determine whether the testimony has 'a reliable basis in the knowledge and experience of [the relevant] discipline.'"[8]   This Court must fulfill a vital "gatekeeping role" that requires the Court to make a threshold assessment "whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and of whether that reasoning and methodology properly can be applied to the facts in issue."[9]

These "exacting standards of reliability" require far "more than subjective belief or unsupported speculation."[10]   Indeed, it is a fundamental rule of evidence that "speculation is

---

[4]   *Id.*
[5]   pp.APPX 30-33.
[6]   *Daubert v. Merrel Dow Pharms. Inc.*, 509 U.S. 579 (1993).
[7]   *Id.* at 589.
[8]   *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).
[9]   *Daubert*, 509 U.S. at 592-93.
[10]   *Weisgram v. Marley Co.*, 528 U.S. 440, 442 (2000); *Daubert*, 509 U.S. at 590.

PD.20430137.1

unreliable...and is inadmissible."[11]  Further, the proponent of the expert has the burden to prove reliability of the expert's opinions.[12]  To meet this burden, the Plaintiff must come forward with objective proof that the testimony of his expert is both scientifically reliable and relevant.[13]

Moreover, a liability expert is only helpful to the fact finder if he is able to establish such an element of the claim through visual inspection, independent research, testing, and knowledge.[14]  If an expert's opinion are based on unreliable facts, the opinion must be excluded.[15]  An expert cannot blindly accept information furnished to him from an interested party.  Rather, an expert must undertake some independent investigation to justify any assumptions made.[16]

Not only must the expert's testimony be reliable, but it must also be relevant.  Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence, and a perfectly equivocal opinion does not make any fact more or less probable and is irrelevant under the Federal Rules Evidence.[17]

## B.  ANALYSIS OF THE RELIABILITY AND RELEVANCY OF IRMITER AND JOHNSON'S OPINIONS

### 1.  The FBS Damage Estimate is Unreliable and Irrelevant.

Plaintiffs have designated Irmiter and Johnson to testify concerning the cost to repair the damage to the Property allegedly caused by the May 19, 2015 weather event.  Irmiter and Johnson, however, should not be permitted to testify on the cost of the repairs because the FBS

---

[11]  *Dunn v. Sandoz Pharms. Corp.* 275 F.Supp. 2d 672, 684 (M.D.N.C. 2003).
[12]  *Mathis v. Exxon Corp.,* 302 F.3d 448, 459-460 (5th Cir. 2002); *Moore v. Ashland Chem. Inc.,* 151 F.3d 269, 276 (5th Cir. 1998).
[13]  *Daubert,* 509 U.S. at 592.
[14]  *Clark v. Takata Corp.,* 192 F.3d 750, 757 (7th Cir. 1999).
[15]  *Brown v. Parker-Hannifin Corp.,* 919 F.2d 308, 311 (5th Cir. 1990).
[16]  *Am. Key Corp. v. Cole Nat'l Corp.,* 762 F.2d 1569, 1580 (11th Cir. 1985).
[17]  *Pipitone,* 288 F.3d at 245.

estimate relies on faulty assumptions, does not consider replacing the roof with materials of like kind and quality, and will only confuse the jury.

### a.   The FBS Estimate Replaces the Roof with Superior Materials.

The FBS estimate is a unreliable and irrelevant because it does not contemplate replacing the roof with materials of like kind and quality as required by the Policy. The flat roofs currently on the Property were surfaced with spray polyurethane foam ("SPF") and an elastomeric coating.[18] The SPF had been applied over a previous layer of SPF which, in turn, had been installed over an original gravel-ballasted, asphalt built-up roof system ("ABUR").[19] The ABUR is a three-ply system with a base sheet.[20]

In the event of a loss, the Policy provides that it will pay the cost to repair or replace, whichever is less, with material of like kind and quality. Rather than complying with the Policy, however, the FBS estimates replacement costs for a far superior and more expensive roofing system. Indeed, the FBS roofing system estimates the costs to replace the existing roofing system with a gravel ballasted, five-ply ABUR system instead of the three-ply system currently present and wholly fails to mention the SPF currently present on the roofs.[21] The FBS estimate's failure to replace the roof with materials of like kind and quality results in a significate increase in price. As such, the estimate is unreliable and irrelevant as it will not assist the trier of fact in calculating the actual amount of damages, if any, and will only serve to the confuse the jury.

### b.   The Estimate Includes Items That Were Not Damaged and Other Unnecessary Costs.

Moreover, the estimate includes items that were not damaged by the May 19, 2015 weather event. The FBS estimate has a line item of $21,300 to remove and replace 100

---

[18]   pp. APPX 51-52.
[19]   *Id.*
[20]   *Id.*
[21]   pp. APPX 30-33.

windows.[22]  However, these windows were actually damaged in 2013 as a result of vandalism and not hail.[23]  Further, the FBS estimate contains a line item to remove and replace wood flooring located in the interior of the Property; however, there is no wood flooring located in the Property.[24]

Additionally, the FBS estimate includes unnecessary and duplicate costs.  For example, the FBS estimate includes an engineering fee of $3,000 for each roof located on the Property, totaling $12,000.[25]  However, this cost is unnecessary and it is unclear where FBS obtained this pricing information.  Further, the FBS estimate contains a separate charge for dumpster rental and hauling fees in the amount of $12,000; however, hauling and dumpster fees are already included in removal costs.[26] Additionally, the price of $12,000 for 10 dumpsters is overinflated, considering that Xactimate estimates the rental cost for 12 large dumpsters to be $6,532.20.[27] Due to the inaccuracies contained in the FBS estimate, Irmiter and Johnson's opinions concerning repair costs should be excluded.

## 2.  Irmiter and Johnson's Opinions Contained in the Report are Unreliable

Irmiter and Johnson's opinions concerning the cause of the roofing damages should also be excluded because they are unreliable and irrelevant. With regards to Johnson, he should not be allowed to proffer any testimony in this matter because he did not perform any independent investigation and merely relies on the faulty methodology and conclusions generated by Irmiter.[28]  Due to this failure to inspect the Property himself prior to validating the report, Johnson had no independent basis as to the extent of damage to the Property and the cause of

---

[22]  p. APPX 33.
[23]  p. APPX 61; p. APPX 72.
[24]  p. APPX 72.
[25]  pp. APPX 30-33.
[26]  p. APPX 33.
[27]  p. APPX 33; p. APPX 68.
[28]  p. APPX 11.

said damage. As such, Johnson's opinions will only confuse the jury and not assist the trier of fact.

Further, the opinions of Irmiter contained in the report are not reliable because he fails to account for, and rule out, other possible causes of damage.  If there are other plausible causes of the Plaintiffs' damage, the Plaintiffs must offer evidence excluding those causes with reasonable certainty.[29]  While the FBS report acknowledges that the Property sustained hail damage on May 15, 2013, the report inaccurately states that the roofs were repaired at hail-damaged locations and a new coating was applied after a 2013 storm event.[30]  Indeed, the report wholly fails to discuss the fact that following the May 15, 2013 hail event, Haag Construction Consulting prepared an estimate in the amount of $391,412.74 to address the "heavy" hail damage to the roofs and Plaintiffs wholly failed to comply with Haag's repair recommendations.[31]

Further, the FBS report fails to address the fact that the coating job performed by Homeworks Roofing was not properly applied and that the improper application of just an elastomeric coating has allowed water to further infiltrate the roofing system causing roof leaks and further degradation of the roof system.[32]  Had Plaintiffs complied with Haag's recommendations following the 2013 event and had the repairs been performed properly, it is unlikely that water would have infiltrated and saturated the Property's roof.[33]  Further, in concluding that no leaks were present at the Property prior to the May 19, 2015 weather event, Irmiter is solely relying on the statements of the Plaintiffs' representative.[34]  Irmiter and

---

[29]  *See Controveo v. Shaw Enviro. & Infrastructure,* 639 F.3d 186, 193 (5th Cir. 2011); *Omni USA, Inc. v. Parker-Hannifin Corp.,* 964 F.Supp. 2d 805, 836-837 (S.D. Tex.2013)(excluding mechanical engineer's conclusion regarding cause of seal leakage, where engineer failed to rule out other possible causes of leakage).
[30]  p. APPX 26.
[31]  p. APPX 55; pp. APPX 61-65.
[32]  pp. APPX 26-27; pp. APPX 55-57.
[33]  p. APPX 58
[34]  p. APPX 26.

Johnson's failure to rule out other causes of loss and merely relying on Plaintiffs' representations renders their report unreliable and irrelevant.  Their opinions should be excluded.

Indeed, Irmiter was recently excluded from offering causation opinions in a windstorm case in Illinois because he relied heavily on the statements of interested parties.[35]  In that case, Irmiter inspected a property four years after the date of loss and relied on the representations of the property owners as to when the property began experiencing leaks.[36]  In excluding Irmiter, the court reasoned that Irmiter relied on the representations of the property owner rather than on his expertise in determining the cause and scope of damages.[37]  In discussing the various reasons why an expert cannot just relay another witness's likely testimony, the court focused on the damage of avoiding the reliability requirements of Rule 702 "through the simple expedient of proffering an expert in lay witness clothing."[38]

In this case, Irmiter and Johnson have done exactly the same thing.  Johnson has never even inspected the Property and blindly relied on Irmiter's opinions to validate the FBS report. In reaching his conclusions, Irmiter wholly failed to rule out other causes of damage and merely relied on the Plaintiffs' statements that it repaired all damage stemming from the May 15, 2013 storm.  Such conclusions, which rely on improper methodology, are not reliable and will only confuse the jury.

### 3. Irmiter is Not Qualified to Testify on Causation.

In support of its position concerning causation and damages, Plaintiffs have submitted a report from FBS which purports to be an engineering report, stamped by engineer Johnson, and

---

[35] *Olivet Baptist Church v. Church Mut. Ins. Co.*, 2016 WL 772787 (N.D. Ill.).
[36] *Id.*
[37] *Id.* at *5.
[38] *Id.* (According to the Seventh Circuit, "the entirety of an expert's testimony cannot be the mere repetition of the out of court statements of others, and…an expert witness may not simply summarize the out of court statements of others has his testimony…An expert who parrots an out-of-court statement is not giving expert testimony; he is a ventriloquist's dummy." *United States v. Brownlee*, 744 F.3d 479, 482 (7th Cir. 2014)

an estimate.[39]  However, Johnson did not actually inspect the Property, nor did he sign the report. Rather, the report was actually prepared and signed by Irmiter and a Ryan Nierengarten, who Plaintiffs have not identified or designated as an expert.

Irmiter's opinions regarding causation should be excluded under Federal Rule of Evidence 702(a) because he is not qualified to render such opinions.  On page 18 of the report, Irmiter states that his opinions are "[b]ased on our education, training, and experience and upon a reasonable degree of engineering certainty…"[40]  A review of Irmiter's curriculum vitae, however, reveals that he is not an engineer, but rather a forensic consultant.[41]  If Irmiter was qualified to give the opinions set forth in the report, he would not need Johnson's engineering stamp of validation.  For these reasons, Irmiter should not be permitted to testify as to causation.

### III. CONCLUSION AND PRAYER

Tom Irmiter is not qualified to testify as to causation, and his opinions should therefore be excluded under Rules 702(a) and 403. Moreover, even if Irmiter is found qualified to render such opinions, Irmiter and Johnson's opinions regarding causation of damages to the Property's roof and the estimate to repair such damages should be excluded under Rule 702 because they are unreliable and irrelevant.

FOR THESE REASONS, Defendant Verlan Fire Insurance Company respectfully asks this Court to grant this Motion and enter an order excluding the testimony of Tom Irmiter and Brian Johnson.

---

[39] pp. APPX 8-11.
[40] p. APPX 26
[41] p. APPX 34.

Respectfully submitted,

By: _____

Peri H. Alkas
Texas Bar No. 00783536
Federal Bar No. 15785
ATTORNEY-IN-CHARGE
PHELPS DUNBAR, LLP
500 Dallas, Suite 1300
Houston, Texas 77002
Telephone (713) 626-1386
Facsimile (713) 626-1388
Email: peri.alkas@phelps.com

**ATTORNEY-IN-CHARGE FOR DEFENDANT,
VERLAN FIRE INSURANCE COMPANY**

Paige C. Jones
Texas Bar No. 24054609
PHELPS DUNBAR, LLP
115 Grand Avenue, Suite 222
Southlake, Texas 76092
(817) 488-3134
(817) 488-3214 Fax
Email: paige.jones@phelps.com

**LOCAL COUNSEL FOR DEFENDANT**

**OF COUNSEL:**
**PHELPS DUNBAR LLP**
Mark C. Dodart: TBN: 00792286
*Admitted Pro Hac Vice*
Tessa P. Vorhaben; La SBN: 32193
*Admitted*
365 Canal Street, Suite 2000
New Orleans, La 70130
Telephone (504) 566-1311
Facsimile (504) 568-9130
Mark.Dodart@phelps.com
Tessa.Vorhaben@phelps.com

PD.20430137.1

## CERTIFICATE OF SERVICE

The foregoing notice will be served upon counsel via the Court's ECF notification system on the date of entry on the Court's docket, as well as e-mail on November __30__, 2016.

Jeffrey L. Raizner
Andrew P. Slania
Amy B. Hargis
RAIZNER SLANIA, LLP
2402 Dunlavy St.
Houston, TX  77006
~and~

efile@raiznerlaw.com
jraizner@raiznerlaw.com
aslania@raiznerlaw.com
ahargis@raiznerlaw.com

William D. Taylor
TAYLOR & TAYLOR LAW
4115 Highgrove Dr.
Arlington, TX  76001

wtaylor@taylorandtaylorlaw.com

Peri Alkas

PD.20430137.1